**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JAMES JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17-cv-04675 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| GHALIAH OBAISI, as Independent ) | |
| Executor of the Estate of DR. SALEH ) | |
| OBAISI, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

In September 2012, Plaintiff James Johnson injured his ankle while playing basketball at Stateville Correctional Center ("Stateville"). The injury caused Johnson to experience severe pain in his ankle. Yet, according to Johnson, Dr. Saleh Obaisi, Dr. Arthur Funk, and Nicolette Duffield (collectively, "Defendants") failed to provide him with appropriate medical care. And so Johnson has filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging that Defendants acted with deliberate indifference to his serious medical condition. Ghaliah Obaisi, in her role as the independent executor of Dr. Obaisi's estate, and Dr. Funk have moved to dismiss the First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Johnson's claims are barred by the statute of limitations. (Dkt. No. 33.) Duffield has also filed her own separate Rule 12(b)(6) motion, claiming that the FAC fails to allege sufficiently that she was personally involved in Johnson's deficient care. (Dkt. No. 49.) For the reasons explained below, both motions are denied.

**BACKGROUND**

For purposes of the motions to dismiss, the Court accepts the well-pleaded facts in the FAC as true and views those facts in the light most favorable to Johnson. *See, e.g.*, *Anicich v. Home Depot USA, Inc.*, 852 F.3d 643, 648 (7th Cir. 2017). The FAC alleges as follows.

In early September 2012, while incarcerated at Stateville, Johnson suffered a painful injury to his ankle playing basketball. (FAC ¶¶ 14–15, Dkt. No. 21.) Stateville medical staff provided Johnson with a crutch and ibuprofen, but he was not treated by a doctor at that time. (*Id*. ¶ 17.) Four days later, medical staff x-rayed Johnson's ankle. (*Id*. ¶ 19.) Eventually, after he filed a grievance requesting medical attention, Johnson was seen by Dr. Obaisi in October 2012. (*Id*. ¶¶ 20–21.) Dr. Obaisi told Johnson that he had a sprained ankle and provided him with a brace and meloxicam. (*Id*. ¶¶ 21–22.)

Johnson continued to file grievances, complaints, and sick-call requests seeking medical attention for his ankle injury. (*Id*. ¶ 23.) As a result, he was seen again by Dr. Obaisi in November or December 2012. (*Id.*) During that visit, Dr. Obaisi took away Johnson's crutch and, despite Johnson's complaint that the pain was "too much to walk on," advised him to "walk on it and it would get better." (*Id*.) Johnson also told Dr. Obaisi that he was experiencing hip pain from using the crutch, to which Dr. Obaisi responded that the pain "would go away soon." (*Id*. ¶ 24.) When Johnson informed Dr. Obaisi that he was uncomfortable walking without his crutch while in so much pain, Dr. Obaisi replied, "Trust me, I'm a doctor." (*Id*. ¶ 25.)

Shortly thereafter, Johnson fell getting out of his top bunk and injured himself further. (*Id*. ¶ 26.) He filed several grievances related to the fall and was summoned to Dr. Obaisi's office in January 2013. (*Id*. ¶¶ 26–27.) But instead of treating Johnson, Dr. Obaisi accused him

of "f**king lying" about the fall from his bunk, told him "there is nothing wrong with your ankle mother f**ker," and demanded he leave the office. (*Id*. ¶ 27.)

In August 2014, Johnson again filed a grievance about pain in his ankle, back, and neck, and requested x-rays. (*Id*. ¶ 28.) Later that month, Dr. Obaisi overheard another doctor attending to Johnson and interjected that Johnson could walk and did not need crutches. (*Id*. ¶ 29.) The other doctor then refused to provide Johnson with crutches. (*Id*.) Two years later, in August 2016, Johnson was seen by a third doctor, Dr. Aguinaldo,[1] for pain in his shoulder and wrist. (*Id*. ¶ 30.) When Johnson also complained about pain in his ankle, Dr. Aguinaldo instructed Johnson to file a separate sick-call slip for that injury. (*Id*.) Johnson then filed several emergency grievances for pain in his ankle, all of which were denied. (*Id*. ¶ 31.)

Johnson subsequently filed the present lawsuit in June 2017, claiming that Defendants acted with deliberate indifference to his serious medical condition in violation of his Eighth Amendment rights by failing to treat his ankle injury adequately.

## DISCUSSION

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face" and allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss, this Court accepts all of the plaintiff's factual allegations as true and "draw[s] all permissible inferences" in the plaintiff's favor. *Bible v. United Student Aid Funds Inc.*, 799 F.3d 633, 639 (7th Cir. 2015).

---

[1] Dr. Aguinaldo's first name is not provided in the FAC or the briefing for the motions to dismiss.

## I. Dr. Obaisi and Dr. Funk

The statute of limitations provides an affirmative defense to constitutional tort claims. *E.g.*, *United States v. Northern Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004). Generally, a complaint need not state all facts necessary to overcome an affirmative defense, which is why it is "irregular to dismiss a claim as untimely under Rule 12(b)(6)." *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006) (internal quotation marks omitted). Dismissal on statute of limitations grounds at the pleading stage may be warranted, however, when a plaintiff pleads facts that effectively establish the defense. *Id.*

The statute of limitations for a § 1983 claim is "governed by the personal injury laws of the state" in which the injury occurred. *Hileman v. Maze*, 367 F.3d 694, 696 (7th Cir. 2004). In the present case, Johnson's injury occurred in Illinois, so the statute of limitations is two years. *See* 735 ILCS 5/13-202. While the length of the limitations period is determined by state law, the rules governing accrual are determined by federal law. *Hileman*, 367 F.3d at 696. Although the statute of limitations begins to run the day an injury accrues, the continuing-violation doctrine allows "a plaintiff to reach back to [the beginning of a violation] even if that beginning lies outside the statutory limitations period, when it would be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct." *Heard v. Sheahan*, 253 F.3d 316, 319–20 (7th Cir. 2001). For Eighth Amendment claims, any time a defendant has the power to treat a prisoner but does not, he creates "a fresh infliction of punishment that cause[s] the statute of limitations to start running anew." *Id.* at 318. In such cases, the injury is the continuing violation of deliberate indifference, which continues "every day that the defendant[] ignore[s] the plaintiff's request for treatment." *Id.* at 319.

Here, in arguing that Johnson's claim is time-barred, Ghaliah Obaisi and Dr. Funk conflate Johnson's physical injury with the relevant injury in this case: the refusal to provide Johnson with adequate medical care. *See id.* at 318. As alleged in the FAC, Johnson was first denied adequate care the day he injured his ankle and was not treated by a doctor. The denial of adequate care continued as Johnson's many grievances were ignored. And when Johnson was seen by medical staff, he was not provided treatment sufficient to alleviate his painful ankle injury.[2] Instead, Dr. Obaisi took away Johnson's crutch and shouted at him. Even though the FAC does not plead any conduct on the part of Dr. Obaisi and Dr. Funk occurring after August 2014, it nonetheless alleges that the denial of adequate medical care continued unremedied after that time, extending the date of accrual to the initiation of the present action. *See, e.g.*, *Ruiz v. Williams*, 144 F. Supp. 3d 1007, 1016 (N.D. Ill. 2015) (denying a motion to dismiss an inmate's claim for improper medical treatment for irritable bowel syndrome on statute of limitations grounds because the injury was a continuing violation and did not accrue until the inmate left the prison); *Watkins v. Ghosh*, No. 11 C 1800, 2011 WL 5981006, at *3 (N.D. Ill. Nov. 28, 2011) (denying a motion to dismiss a deliberate indifference claim against prison medical staff even though the plaintiff had been injured more than four years prior because the denial of care amounted to a continuing violation). It may be that after further development of the evidentiary

---

[2] That an inmate received "some" medical care does not preclude a finding of deliberate indifference if the medical treatment was "blatantly inappropriate." *See, e.g.*, *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007). Whether medical care is "blatantly inappropriate" turns on whether the physician's actions "permit the inference" that he or she "intentionally or recklessly disregarded" the patient's needs. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). It is enough to show that treatment was "so far afield of accepted professional standards as to raise the inference that it was not actually based on medical judgement." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). At the pleading stage, allegations that Dr. Obaisi took away Johnson's crutch, did not alter Johnson's treatment even though his pain continued, shouted at him, accused him of lying, and prevented other doctors from treating him support a claim that the treatment given Johnson was "so far afield of professional standards" as to rise to the level of being blatantly inappropriate.

record, Ghaliah Obaisi and Dr. Funk will be able to point to facts showing that the statute of limitations began running as to Dr. Obaisi and Dr. Funk at some earlier time. Perhaps the record will show that they truly had no involvement in the denial of adequate care to Johnson after August 2014. But at this early stage in the case, the question before the Court is whether Johnson has pleaded himself out of court by alleging facts that effectively establish that his claim is time-barred as a matter of law. The Court cannot reach that conclusion based on the face of the complaint.

Dr. Funk also argues that Johnson has made no specific allegations against him and so his inclusion in the FAC is based solely on Johnson's belief that the grievances he submitted put Dr. Funk on notice that Johnson was receiving improper medical care, and this does not support a finding that Johnson suffered a continuing violation. However, Johnson need only plead enough facts to state a plausible claim for relief against Dr. Funk, who, as Wexford's Acting Regional Medical Director, was responsible for "ensuring timely . . . responses to inmates' healthcare needs." (FAC ¶ 48.) Administrators like Dr. Funk have a responsibility to ensure proper medical care, which is sufficient to infer "personal involvement . . . at the pleading stage." *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981); *Ford v. Wexford Health Sources, Inc.*, No. 12 C 4558, 2013 WL 474494, at *6 (N.D. Ill. Feb. 7, 2013) (finding that a prison medical director's responsibility over prisoner medical care is sufficient to infer "personal involvement in the denial of such care at the pleading stage"). And Johnson has alleged that Dr. Funk learned that Johnson was being denied care through Johnson's numerous letters and grievances. (FAC ¶ 54.) Dr. Funk may still be able to demonstrate his lack of personal involvement based on a more developed evidentiary record at the summary judgment stage or at trial. But for present purposes, Johnson has alleged sufficient facts to survive a motion to dismiss.

## II.     Duffield

Duffield was a healthcare administrator at Stateville during the period Johnson was allegedly denied adequate medical care. (FAC ¶ 56.) As alleged, Duffield was aware of the improper care Johnson received because he sent her numerous grievances and letters, which she ignored or dismissed. (*Id*. ¶¶ 60–61.) Duffield argues that these allegations do not show her personal involvement in Johnson's treatment. Specifically, Duffield contends that the FAC does not plausibly allege that she knew Johnson was receiving inadequate medical treatment, and therefore she did not act with the requisite deliberate indifference for an Eighth Amendment violation. She argues that Johnson is actually advancing an improper claim of *respondeat superior* liability.

Addressing the latter point, Duffield is correct that advancing a claim based on *respondeat superior* liability would be improper in this case. A prison official is only liable for inadequate medical care when he or she acts with deliberate indifference to an inmate's serious medical condition. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). This standard requires the official to have enough personal involvement with the prisoner's case such that there is a "causal connection" between the official's actions and the violation of the prisoner's rights. *Wolf-Lille v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). Because personal involvement is required, there is no *respondeat superior* liability for § 1983 claims. *Id*.

Contrary to Duffield's argument, however, Johnson does not seek to hold Duffield responsible under a theory of *respondeat superior*. Instead, Johnson argues that she was personally deliberately indifferent in her capacity as Stateville's healthcare administrator for ignoring and dismissing his grievances. The prohibition on *respondeat superior* liability does not mean that a supervisor never may be found liable for a subordinate's conduct. Rather, it means

that to be found liable, supervisors must "know about the unconstitutional conduct and facilitate it . . . or turn a blind eye," *Green v. Florez*, No. 15-cv-07928, 2018 WL 6018605, at *5 n.3 (N.D. Ill. Nov. 16, 2018), and there must be evidence of the supervisor's "actual knowledge of, or reckless disregard for, a substantial risk of harm," *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996). Turning a blind eye in that way is the causal connection that establishes personal involvement for a finding of deliberate indifference.

Whether an administrator had actual knowledge that an inmate received inadequate medical treatment is a question of fact, *Farmer*, 511 U.S. at 842, and therefore courts may decline to resolve deliberate indifference issues based on a motion to dismiss. *Watkins*, 2011 WL 5981006, at *5. As it stands, Johnson alleges that Duffield had actual knowledge of Johnson's inadequate medical treatment from his numerous grievances and letters, which were denied or ignored. Yet, Duffield contends that the grievances are insufficient to establish her personal involvement because Johnson has not alleged facts establishing that she had actual knowledge of his improper care and he has only attached one letter to his complaint.

But a single letter to an administrator of a prison hospital, even if it is ignored, can be enough at the pleading stage. Administrators of prison hospitals, like Duffield, have a specific responsibility to ensure proper medical care for inmates that on its own can be sufficient to infer "personal involvement . . . at the pleading stage." *Duncan*, 644 F.2d at 655; *Hemphill v. Wexford Health Sources, Inc.*, No. 15 cv 4968, 2016 WL 2958449, at *2 (N.D. Ill. May 23, 2016) ("[O]versight of the prison medical care is a sufficient basis from which to infer . . . personal involvement in the denial of such care at the pleading stage"); *Bingham v. Baker*, No. 15 C 11740, 2016 WL 8711599, at *3 (N.D. Ill. Apr. 15, 2016) (finding the allegation that defendants,

8

who were senior medical officials, oversaw day-to-day operations of healthcare at the prison was sufficient to infer their personal involvement in the denial of adequate medical care).

Further, a prisoner's correspondence to an administrator at the prison in which a violation takes place may serve as evidence of the administrator's actual knowledge of the violation. *See Perez v. Fenoglio*, 792 F.3d 768, 781–782 (7th Cir. 2015) ("An inmate's correspondence to a prison administrator may . . . establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation."); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (finding that prison superintendent had sufficient knowledge of constitutional deprivation by the many letters sent to him from the plaintiff). Specifically, at the pleading stage, deliberate indifference may be shown where, as here, it is alleged that the administrator receives but ignores a prisoner's grievance. *See Santiago v. Walls*, 599 F.3d 749, 758–59 (7th Cir. 2010). Such action permits the inference that the prison official "actually knew or consciously turned a blind eye" to the violation. *Id*. That Johnson only attached one grievance to his FAC does not preclude a finding that Duffield had actual knowledge of his improper medical care. Accepting the allegations in the FAC as true, as the Court must, there are many more grievances and letters than the one Johnson attached as an exhibit. (FAC ¶¶ 20, 23, 26, 28, 31.) And Johnson alleges that Duffield received those grievances and letters, and through them learned that Johnson was not receiving appropriate medical care for his ankle injury. (*Id.* ¶ 60.) These facts are sufficient for the Court to infer Duffield had the actual knowledge necessary for a finding of personal involvement. *See Duncan*, 644 F.2d at 655.

Duffield relies on *Knox v. Wainscott*, No. 03 C 1429, 2003 WL 21148973, at *11 (N.D. Ill. May 14, 2003), and *Gray v. Taylor*, 714 F. Supp. 2d 903, 911 (N.D. Ill. 2010), to argue that letters to prison administrators are insufficient to establish personal involvement. But he

misconstrues both cases. The plaintiffs in *Knox* and *Gray* wrote letters to administrators at the Illinois Department of Corrections, not to the administrators at the hospitals or specific prisons where their respective injuries occurred. *See Gray*, 714 F.Supp.2d at 911; *Knox*, 2003 WL 21148973, at *11. Administrators at the Illinois Department of Corrections oversee all adult state prisons in Illinois and are not the equivalent of healthcare administrators like Duffield, who oversee prisoner care at specific prisons. At this stage, Johnson only needs to plead enough facts for the Court to "draw the reasonable inference" that Duffield knew of his inadequate medical care and turned a blind eye. *See Green*, 2018 WL 6018605, at *4 n.3. He has met that burden. Therefore, Duffield's motion to dismiss is denied.

## CONCLUSION

For the foregoing reasons, the motions to dismiss the claims against Dr. Obaisi and Dr. Funk (Dkt. No. 33) and Duffield (Dkt. No. 49) are both denied.

ENTERED:

Dated: September 30, 2019

Andrea R. Wood
United States District Judge

10