IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES JOHNSON, | ) |
| Plaintiff, | ) ) ) |
| | ) No. 17-cv-04675 |
| v. | ) |
| | ) Judge Andrea R. Wood |
| GHALIAH OBAISI, as Independent Executor of the Estate of DR. SALEH OBAISI, et al., | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff James Johnson is an inmate in the custody of the Illinois Department of Corrections ("IDOC"). While Johnson was incarcerated at the Stateville Correctional Center ("Stateville"), he injured his ankle during a basketball game. Despite receiving treatment for his injury from Stateville's medical staff, including Medical Director Saleh Obaisi, Johnson claims that he continued to experience pain in his ankle for years after his injury. Consequently, Johnson filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging that Dr. Obaisi and Dr. Arthur Funk were deliberately indifferent to his serious medical condition in violation of his Eighth Amendment rights. (Am. Compl., Dkt. No. 21.) Now, Defendants Ghaliah Obaisi, in her role as the independent executor of Dr. Obaisi's estate, and Dr. Funk move for summary judgment on the deliberate indifference claims. (Dkt. No. 104.) For the reasons that follow, Defendants' motion for summary judgment is granted.

## BACKGROUND

The following facts are undisputed.

James Johnson is an inmate in the custody of the IDOC who was incarcerated at Stateville from 2005 through 2017 and is currently housed at Lawrence Correctional Center. (Pl.'s Resp. to Defs.' Statement of Undisputed Facts ("PRDSF") ¶ 1, Dkt. No. 112.) In early September 2012, Johnson injured his left ankle while playing basketball with other Stateville inmates. (*Id.* ¶ 8.) Shortly thereafter, on September 10, 2012, a physician, Dr. Sevilla, evaluated Johnson and diagnosed him with a sprained left ankle, noting no sign of a fracture. (*Id.* ¶¶ 15–16.) Dr. Sevilla prescribed Johnson pain mediation, gave him a permit authorizing crutches, and ordered an X-ray to rule out a non-obvious ankle fracture. (*Id.* ¶ 16.) The X-ray was taken on September 17, 2012, and the radiologist concluded that it revealed no fracture. (*Id.* ¶ 17.)

Dr. Sevilla discussed Johnson's condition with Dr. Obaisi, Stateville's Medical Director, and they concluded that Johnson had a sprained ankle with secondary tendonitis. (*Id.* ¶¶ 3, 19.) Johnson received more pain medications, re-authorized permission for crutches, and an ankle brace. (*Id.* ¶ 19.) A follow-up X-ray was performed on Johnson's ankle on October 12, 2012, and the results were consistent with the first X-ray's finding of no fracture. (*Id.* ¶ 20.) While the radiologist who reviewed the second X-ray noted an apparent bone chip on the inner side of Johnson's ankle, he concluded that it was likely from an old injury or pre-existing developmental issue. (*Id.* ¶ 21.) When Johnson came in for an evaluation on October 22, 2012, Dr. Obaisi diagnosed Johnson with left foot fasciitis and tendonitis. (*Id.* ¶ 22.) Dr. Obaisi decided that Johnson's crutches should be discontinued and instead determined that Johnson's left foot should be injected with a steroid and pain medication to reduce the ankle's inflammation and accompanying pain. (*Id.*) When Dr. Obaisi saw Johnson for a follow-up visit on November 8,

2012, he noted that Johnson's left ankle and heel had no more swelling and Johnson reported only minor pain. (*Id.* ¶ 23.) As a result, Dr. Obaisi determined that Johnson's tendonitis was resolved. (*Id.* ¶ 24.)

On January 14, 2013, Johnson had another follow-up visit with Dr. Obaisi. (*Id.* ¶ 25.) During that visit, Johnson abruptly walked out of the exam room after receiving a cortisone injection. (*Id.*) As Johnson left the room, Dr. Obaisi observed that Johnson walked with a normal gait and no limp. (*Id.* ¶ 26.) Based on that observation and his perception that Johnson was refusing treatment, Dr. Obaisi changed Johnson's status to "follow-up as needed." (*Id.*) In March 2013, Johnson returned to Dr. Obaisi complaining of ankle and foot pain. (*Id.* ¶ 27.) When examining Johnson's ankle, Dr. Obaisi observed no swelling and full range of motion. (*Id.* ¶ 28.) But because Johnson claimed to be experiencing pain, Dr. Obaisi prescribed him anti-inflammatory and pain medication. (*Id.*) Again, in July 2013, Johnson came to Dr. Obaisi reporting pain in his upper extremities and ankle but, on examination, Dr. Obaisi observed no abnormalities. (*Id.* ¶ 29.) Nonetheless, Dr. Obaisi prescribed additional pain medications for Johnson's self-reported pain. (*Id.*)

Over the next several months, Johnson had several medical appointments rescheduled due to the prison being on lockdown, patient unavailability, or scheduling conflicts. (*Id.* ¶ 30.) Thus, Johnson's next medical evaluation was not until February 28, 2014, when he saw a nurse due to his ankle pain. (*Id.* ¶ 31.) The nurse's objective findings revealed no weakness, swelling, or redness, and found full range of motion in Johnson's left ankle. (*Id.*) Johnson again reported ankle pain during a visit with a nurse on May 12, 2014. (*Id.* ¶ 33.) The nurse subsequently consulted with Dr. Obaisi, and Dr. Obaisi authorized Johnson to receive an ankle brace. (*Id.* ¶ 33.) After Dr.

3

Obaisi evaluated Johnson on August 8, 2014, he ordered an X-ray be taken of Johnson's left foot and ankle. (*Id.* ¶ 34.) The X-ray revealed no fracture and was otherwise unremarkable. (*Id.* ¶ 35.)

Later in August 2014, another Stateville physician, Dr. Martija, examined Johnson's ankle and noted that the areas where Johnson felt pain were not consistent with the anatomic site of the bone chip in his ankle. (*Id.* ¶ 36.) Dr. Martija further noted that Johnson's pain did not affect his gait or activities of daily living. (*Id.*) Finally, Dr. Martija reported that Johnson was not wearing the ankle brace previously prescribed for him by Dr. Obaisi. (*Id.*) On November 12, 2014, Johnson visited Dr. Obaisi regarding pain in his left foot. (*Id.* ¶ 38.) Dr. Obaisi assessed Johnson as having plantar fasciitis, prescribed additional pain medication, and ordered another X-ray. (*Id.*) Once again, the X-ray found nothing other than the old bone chip. (*Id.* ¶ 39.)

On May 21, 2015, Johnson's left ankle was evaluated by a nurse who performed a physical examination and found no swelling or bruising and full range of motion. (*Id.* ¶ 42.) Johnson had four medical appointments between June 2015 and June 2016 unrelated to his ankle pain and did not report experiencing ankle pain during any of those appointments. (*Id.* ¶¶ 44–48.) But when he visited a physician's assistant in July 2016, Johnson claimed to be experiencing pain in his back and ankle. (*Id.* ¶ 49.) Following a physical examination, the physician's assistant assessed Johnson as having chronic pain resulting from myositis and referred him to Dr. Obaisi for a reevaluation. (*Id.*) When Dr. Obaisi evaluated Johnson on July 16, 2016, he ordered an X-ray of Johnson's left foot and ankle but the X-ray results were again negative. (*Id.* ¶ 51.) Another X-ray performed on July 29, 2016, also yielded negative findings. (*Id.* ¶¶ 52–53.)

Johnson visited a physician's assistant on February 22, 2017, complaining of knee and ankle pain. (*Id.* ¶ 56.) The physician's assistant's physical examination revealed no swelling, distress, and full range of motion in Johnson's foot and ankle. (*Id.* ¶ 57.) She assessed Johnson

4

with chronic pain, prescribed him pain medication, referred him for physical therapy, and referred him to see Dr. Obaisi. (*Id.*) When Dr. Obaisi evaluated Johnson on March 22, 2017, his physical examination revealed no issues but Dr. Obaisi ordered another X-ray to rule out any fracture. (*Id.* ¶ 58.) The X-ray was negative. (*Id.* ¶ 59.) On April 20, 2017, Johnson visited with Dr. Obaisi, who diagnosed Johnson with chronic left-ankle tendonitis and prescribed Johnson additional pain and anti-inflammatory medication. (*Id.* ¶ 60.) Dr. Obaisi also recommended Johnson consult with an orthopedic surgeon and made a referral to Wexford Health Sources Inc.'s ("Wexford")[1] collegial review[2] to discuss the recommendation. (*Id.* ¶ 61.) Following the collegial review, Wexford approved Dr. Obaisi's recommendation for Johnson to receive an off-site orthopedic consultation. (*Id.* ¶ 63.) During a security sweep of Johnson's cell conducted on May 22, 2017, IDOC correctional officers recovered multiple expired pain medications prescribed to Johnson between 2014 and 2016, thereby revealing that Johnson had not taken his medications as prescribed. (*Id.* ¶ 64.)

After a physical therapy session on June 6, 2017, Johnson claimed that his legs felt a little stronger. (*Id.* ¶ 65.) Two weeks later, Johnson completed another physical therapy session. (*Id.* ¶ 66.) His physical therapist noted that Johnson walked normally and further reported that Johnson's complaints of pain were "highly subjective" and that he would be discharged soon. (*Id.* ¶ 66.) Before Johnson could receive the off-site orthopedic consultation recommended by Dr. Obaisi, he was transferred to Menard Correctional Center ("Menard") and thus was no longer under the care of Dr. Obaisi. (*Id.* ¶ 67.) During his initial intake screening at Menard, Johnson

---

[1] Wexford contracts with the IDOC to provide medical services at Stateville and employed Dr. Obaisi and the other Stateville medical staff. (PRDSF ¶ 3.)

[2] Collegial review refers to a discussion between the Stateville Medical Director, a Wexford corporate physician, and others regarding a patient's potential treatment options. (PRDSF ¶ 62.)

5

made no mention of any ankle pain. (*Id.*) While incarcerated at Menard, Johnson repeatedly refused to see on-site physicians or appear for evaluations necessary to receive treatment off-site. (*Id.* ¶¶ 68–69.) Because he voluntarily failed to appear for the necessary evaluations, Johnson's referral for off-site orthopedic treatment was canceled on January 26, 2018. (*Id.* ¶ 70.) Since Johnson left Stateville, he has not received any medical treatment for his left ankle. (*Id.* ¶ 71.)

## DISCUSSION

Summary judgment is appropriate if the admissible evidence considered as a whole shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law, even after all reasonable inferences are drawn in the non-movant's favor. *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011). Here, Defendants seek summary judgment on Johnson's § 1983 claim that Dr. Obaisi and Dr. Funk were deliberately indifferent to Johnson's serious medical needs in violation of the Eighth Amendment.

An Eighth Amendment deliberate indifference claim requires a plaintiff to establish that he suffered from "(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (internal quotation marks omitted). The first, objective element of a deliberate indifference claim requires in the medical context that "the inmate's medical need be sufficiently serious." *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). The second, subjective element requires the plaintiff to prove that the "prison official acted with a sufficiently culpable state of mind. A negligent or inadvertent failure to provide adequate medical care is insufficient to state a [§] 1983 claim." *Id.*

    I.        **Dr. Funk**

The Court first addresses Johnson's deliberate indifference claim against Dr. Funk. At all times relevant here, Dr. Funk was the Regional Medical Director for Wexford. (PRDSF ¶ 5.) Yet Johnson concedes that he was never treated by Dr. Funk and has never even interacted with him. (*Id.* ¶¶ 72–74.) Nor does Johnson claim that Dr. Funk had any knowledge of the treatment Johnson received from Stateville's medical staff or any grievances Johnson submitted. (*Id.* ¶¶ 75–76.) To hold an individual defendant liable under § 1983, a plaintiff must prove that the defendant "caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Thus, a supervising prison official like Dr. Funk "cannot be personally liable under a theory of respondeat superior." *Id.* at 992–93 (internal quotation marks omitted). Rather, "some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery." *Id.* at 993 (internal quotation marks omitted). Where an official did not directly participate in treating a plaintiff, such a connection can be shown where the official nonetheless "condoned or acquiesced in a subordinate's unconstitutional treatment." *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010).

Although Johnson acknowledges there is no evidence showing that Dr. Funk had any involvement in his treatment, he asserts that he filed multiple grievances that Dr. Funk must have known about, given his supervisory position. However, the Seventh Circuit has been clear that there is no "ironclad rule that any prisoner communication to a prison official anywhere in the corrections hierarchy constitutes adequate notice to the official of a violation of the Eighth Amendment." *Vance*, 97 F.3d at 993. It is the plaintiff's burden to "demonstrat[e] that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to 'an excessive risk to inmate health or safety.'" *Id.* (quoting *Farmer v.*

*Brennan*, 511 U.S. 825, 837 (1994)). Johnson falls well short of satisfying his burden, as he points to no evidence of any particular communication sent to Dr. Funk that would have given him notice of the allegedly deficient care Johnson received for his ankle injury. Consequently, Johnson's deliberate indifference claim against Dr. Funk fails as a matter of law and Dr. Funk is entitled to summary judgment.

## II. Dr. Obaisi

Unlike Dr. Funk, Dr. Obaisi was one of the physicians directly involved in treating Johnson's ankle injury. Johnson argues that because his ankle pain did not resolve over the nearly five years he was under Dr. Obaisi's care, the doctor's treatment was necessarily constitutionally inadequate.

To satisfy the objective element of a deliberate indifference claim, a plaintiff must show that he had "a medical condition that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Edwards v. Snyder*, 478 F.3d 827, 830–31 (7th Cir. 2007). There are "a variety of medical conditions" that can qualify as objectively serious. *Id.* at 831. In an unpublished (and therefore non-precedential) decision, the Seventh Circuit held that an "ankle sprain did not constitute a serious medical need." *Bacon v. Harder*, 248 F. App'x 759, 761 (7th Cir. 2007). But that finding was supported by what the Seventh Circuit described as "ample evidence in the record," which is not the case here. Nothing in the Seventh Circuit's unpublished order, suggests that an ankle sprain could not constitute a serious medical need under other circumstances. Indeed, subsequent district courts have found that "where an inmate's foot or ankle injury causes significant or prolonged pain, a reasonable jury can find that the injury constitutes a serious medical condition." *Jordan v. Stahr*, No. 11 C 2362, 2017 WL 959013, at *4 (N.D. Ill. Mar. 13, 2017); *see also*

*Alvarez v. Wexford Health Sources, Inc.*, No. 13 C 703, 2016 WL 7046617, at *4 (N.D. Ill. Dec. 5, 2016) (noting disagreement among courts as to whether an ankle sprain is an objectively serious medical condition but observing that evidence of persistent, prolonged pain is usually sufficient to create a question of fact). Here, given that Johnson's ankle injury has caused him prolonged pain, this Court finds that a reasonable jury could conclude that it was a serious medical condition.

Next, the Court turns to whether Dr. Obaisi was deliberately indifferent to Johnson's ankle injury. For a prison official to be deliberately indifferent, he "must know of facts from which he could infer that a substantial risk of serious harm exists, and he must actually draw the inference." *Whiting*, 839 F.3d at 662. "While evidence of medical malpractice often forms the basis of a deliberate indifference claim, the Supreme Court has determined that plaintiffs must show more than mere evidence of malpractice to prove deliberate indifference." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (citing *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)). Instead, a medical professional is liable only where he makes "a decision that represents such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008) (internal quotation marks omitted). Thus, "where evidence exists that the defendant[] knew better than to make the medical decisions that [he] did," the claim should go to a jury. *Petties*, 836 F.3d at 731. By contrast, "a mere disagreement with the course of the inmate's medical treatment does not constitute an Eighth Amendment claim of deliberate indifference." *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1991) (internal quotation marks omitted).

In considering whether a defendant has been deliberately indifferent, a court must look to "the totality of an inmate's medical care." *Petties*, 836 F.3d at 728. Here, the undisputed record shows that Dr. Obaisi (and other Stateville medical professionals) were attentive to Johnson's complaints of ankle pain. Over a five-year period, Johnson's ankle was X-rayed seven times— each time the X-ray revealed no fracture or other finding that could be associated with his reported ankle pain. Further, after about two months of treatment, Dr. Obaisi and other medical professionals' physical examinations found no swelling and full range of motion in Johnson's ankle and no abnormalities in his gait. While Johnson continued to report pain in his ankle, Dr. Obaisi was not deliberately indifferent to that pain and prescribed Johnson pain medications. Nor did Dr. Obaisi persist in one single course of treatment once it became clear that Johnson's pain was not resolving. *See id.* at 729–30 ("[One] situation that might establish a departure from minimally competent medical judgment is where a prison official persists in a course of treatment known to be ineffective."). Instead, Dr. Obaisi elevated Johnson's treatment by injecting his ankle with steroids and pain medications, authorizing an ankle brace, and eventually recommending a referral to an orthopedic surgeon. *See Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019) (affirming summary judgment and finding no deliberate indifference where the defendant responded to the inmate's changing symptoms and made referrals when necessary, "all the while treating [the inmate's] symptoms"); *Pyles v. Fahim*, 771 F.3d 403, 412 (7th Cir. 2014) (affirming summary judgment and determining that a doctor was not deliberately indifferent to an inmate's pain when he responded to the inmate's complaints about the ineffectiveness of medications "by prescribing new medications or changing doses"). And Johnson does not contend that Dr. Obaisi's treatment made his pain worse. *See Johnson v. Dominguez*, 5 F.4th 818, 826 (7th Cir. 2021) (concluding that the defendants did not persist in a conservative treatment that they

knew to be ineffective because even though the plaintiff continued to complain of intermittent hernia pain, the hernia did not change in size and his symptoms did not worsen).

That the efforts of Dr. Obaisi and other Stateville medical staff were not fully successful[3] in alleviating Johnson's ankle pain is not sufficient, by itself, to establish deliberate indifference. And given that the record shows that Johnson did not take his pain medications or wear his ankle brace as directed, his own noncompliance with treatment may have been responsible for the duration of his pain. *See Walker*, 940 F.3d at 965 ("That [the inmate's] pain and other symptoms did not subside is not evidence of [the defendant's] deliberate indifference, especially considering that [the inmate] voluntarily stopped taking pain medication at some point . . . ."). Notably, Johnson fails to point to any evidence tending to show that Dr. Obaisi provided deficient care. Instead, he relies on allegations made in his amended complaint. But "a party cannot defeat summary judgment by relying on unsubstantiated facts or by merely resting on [his] pleadings." *Reliford v. Ghosh*, No. 10 C 3555, 2012 WL 2458565, at *6 (N.D. Ill. June 27, 2012). Moreover, the record is not clear as to the exact cause of Johnson's prolonged pain, and Johnson does not identify any treatment that would have been more appropriate than that provided by Dr. Obaisi. *See Wilson v. Adams*, 901 F.3d 816, 821 (7th Cir. 2018) (affirming summary judgment in favor of the defendant, noting that "[i]t is true that continuing the same treatment despite no results can constitute indifferent treatment, but [the plaintiff] makes no suggestion that [the defendant] was withholding another more effective available treatment." (citation omitted)); *Walker v. Peters*, 233 F.3d 494, 499 (7th Cir. 2000) ("[W]here there [is] no evidence that the inmate's symptoms were consistent only with a single diagnosis, and where there is no evidence that the doctor was

---

[3] It is not clear that the treatment Johnson received was, in fact, unsuccessful, since Johnson did appear to have some improvement with physical therapy and, upon his departure from Stateville, did not take the steps necessary to receive offsite treatment from a specialist or receive further medical attention for his ankle.

ignoring the inmate's medical needs, it is not enough to show that a reasonable doctor would have made the correct diagnosis and treatment.").

In sum, the Court finds that Johnson has failed to present evidence sufficient to show that Dr. Obaisi's treatment of his ankle injury and pain departed from minimum professional standards. To the contrary, the record shows that Dr. Obaisi exercised reasonable medical judgment in treating Johnson's ankle. For that reason, summary judgment is granted in favor of Ghaliah Obaisi.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Dkt. No. 104) is granted. The Clerk will enter Judgment in favor of Ghaliah Obasi and Dr. Funk upon the resolution of the outstanding issues regarding the settlement with Defendant Nicolette Duffield.

ENTERED:

Dated: March 21, 2022

Andrea R. Wood
United States District Judge